U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

FILED

MAR - 8 2012

CLERK, U.S. DISTRICT COURT
by_____
            Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

ROBERT LOPEZ, JR.,                    §
                                      §
          Plaintiff,                  §
                                      §
VS.                                   §    NO. 4:10-CV-921-A
                                      §
MICHAEL J. ASTRUE,                    §
COMMISSIONER OF SOCIAL                §
SECURITY,                             §
                                      §
          Defendant.                  §

MEMORANDUM OPINION
and
ORDER

Before the court for decision is the complaint of plaintiff,
Robert Lopez, Jr., seeking judicial review of the final decision
of Michael J. Astrue, Commissioner of Social Security
("Commissioner"), denying his claim for disability insurance
benefits under Title II of the Social Security Act ("Act").  The
court has concluded that Commissioner's decision should be
affirmed.

I.

Background

The Administrative Law Judge ("ALJ") decided on February 4,
2009, that "[b]ased on the application for a period of disability
and disability insurance benefits protectively filed on December
27, 2006, the [plaintiff] is not disabled under sections 216(i)
and 223(d) of the Social Security Act."  R. at 20.  The Appeals

Council denied plaintiff's request for review on May 21, 2010, and the February 4, 2009 decision of the ALJ became the final decision of the Commissioner.  Id. at 3.[1]

Plaintiff instituted this action December 6, 2010, complaining of Commissioner's decision.  The matter was referred to the United States Magistrate Judge for proposed findings and conclusions and a recommendation for disposition.  The magistrate judge ordered that plaintiff's complaint be treated as an appeal from the Commissioner's decision, and fixed a timetable for the filing of briefs.  Both sides timely filed briefs.  The magistrate judge issued his proposed findings and conclusions and his recommendation ("FC&R") that the decision of the Commissioner be reversed and remanded "for the sole purpose of determining the amount of benefits to be awarded to [plaintiff] under the Act." FC&R at 12.  Although neither party filed objections, the court ordered the Commissioner to file a response to the FC&R.  The Commissioner timely filed his response, to which plaintiff filed a reply.

---

[1]The Appeals Council noted in its May 21, 2010 Notice of Appeals Council Action that "since the date of the [ALJ's] decision, [plaintiff was] found to be under a disability beginning January 31, 2009, based on the application(s) [plaintiff] filed on March 24, 2009," R. at 4, but concluded that finding did not warrant a change in the ALJ's decision.

II.

## Positions Taken by the Parties and the FC&R

A.   Plaintiff's Brief

Plaintiff defines in his brief filed with the magistrate judge the issues to be decided as follows:

First Issue:

The ALJ Failed To Properly Consider Expert Medical
Opinion In Determining Residual Functional Capacity.

Pl.'s Appeal from the Decision of the Comm'r of Soc. Sec. ("Pl.'s Appeal") at 7.

Second Issue:

The Commissioner Failed to Properly Evaluate
Credibility.

Id. at 10.

Third Issue:

The ALJ Used an Improper Standard to Evaluate the
Plaintiff's Impairments.

Id. at 13.

Summed up, plaintiff's argument in support of the first issue was that the ALJ failed to properly apply legal standards governing the evaluation of, and weight to be given to, the opinions of his treating physician, James Bohnsack, M.D. ("Bohnsack"), and the testifying medical expert, John Simonds, M.D. ("Simonds").  Bohnsack and Simonds both opined that

plaintiff was limited to sedentary work. However, in determining plaintiff's Residual Functional Capacity ("RFC"), the ALJ concluded that plaintiff was able to perform light work.

In support of the second issue, plaintiff argued that the ALJ failed to articulate the reasons why he found plaintiff's testimony to not be credible. According to plaintiff, the ALJ failed to follow the procedure for evaluating plaintiff's subjective complaints and failed to articulate credible reasons for rejecting those complaints.

In support of the third issue, plaintiff argued that the ALJ failed to properly evaluate plaintiff's severe impairments as required by Stone v. Heckler, 752 F.2d 1099 (5th Cir. 1985), and that the ALJ's failure may have caused him to overlook plaintiff's anxiety, bilateral inguinal hernia, and need to elevate his legs. Thus, according to plaintiff, the ALJ failed to consider all of plaintiff's vocationally significant impairments and failed to fully assess his residual functional capacity.

B.   Commissioner's Responsive Brief

Commissioner responded that the ALJ properly considered all of the medical evidence in the record in deciding not to give controlling weight to the opinions of Bohnsack or Simonds. Commissioner argued that substantial evidence supported the ALJ's

4

credibility determination, that the ALJ correctly applied the
Fifth Circuit's opinion in <u>Stone</u>, and that the ALJ properly
considered all of plaintiff's impairments.

C.   The FC&R

The recommendation of the magistrate judge was that
Commissioner's decision be reversed and that the matter be
remanded for the sole purpose of determining the amount of
benefits to which plaintiff was entitled.   The magistrate judge
considered the issues to be decided to be:

> 1.   Whether the ALJ properly considered the relevant
>      medical opinions of record;
>
> 2.   Whether the ALJ properly evaluated [plaintiff's]
>      credibility; and,
>
> 3.   Whether the ALJ properly included all of
>      [plaintiff's] severe impairments in his analysis
>      at Step Two.[2]

FC&R at 4.

---

[2]The magistrate judge correctly described the five-step analysis set forth in 20 C.F.R. § 404.1520 to determine whether plaintiff is disabled.  FC&R at 2-3.  First, the claimant must not be presently working at any substantial gainful activity as defined in the regulations.  Second, the claimant must have an impairment or combination of impairments that is severe.  20 C.F.R. § 404.1520(c).  Third, the impairment or combination of impairments must meet or equal an impairment listed in the appendix to the regulations.  20 C.F.R. Part 404, Subpt. P, App. 1; 20 C.F.R. § 404.1520(d).  Fourth, the impairment or impairments must prevent the claimant from returning to past relevant work.  <u>Id.</u> § 404.1520(f).  And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience.  <u>Id.</u> § 404.1520(g).  At steps one through four, the burden of proof rests upon the claimant to show he is disabled.  <u>Crowley v. Apfel</u>, 197 F.3d 194, 198 (5th Cir. 1999).  If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing despite his existing impairments.  <u>Id.</u>

Under the first issue the magistrate judge considered plaintiff's argument to be that because the ALJ failed properly to evaluate the medical opinions of Bohnsack and Simonds, neither the ALJ's RFC determination nor his ultimate conclusion that plaintiff was not disabled were supported by substantial evidence.  As to the first issue, the magistrate judge concluded that the ALJ failed to evaluate and give proper weight to the opinions of Bohnsack and Simonds without adequate explanation or assessment, in that they limited plaintiff to sedentary work, while the ALJ limited plaintiff to light work with additional restrictions.  The magistrate judge found no medical-opinion evidence on which the ALJ relied in rejecting the opinions of Bohnsack or Simonds, and thus concluded the ALJ was required to specifically analyze the factors set forth in 20 C.F.R. § 404.1527(d).  The magistrate judge concluded that the ALJ's failure to do so violated the requirements set forth by the Fifth Circuit in <u>Newton v. Apfel</u>, 209 F.3d 448 (5th Cir. 2000).

The magistrate judge further concluded that the ALJ's improper evaluation of the relevant medical opinions led him to utilize the wrong table under Medical-Vocational Rule 201.14, found in 20 C.F.R. Part 404, Subpart P, App. 2.  The ALJ used Table 2--Residual Functional Capacity: Maximum Sustained Work Capacity Limited to Light Work as a Result of Severe Medically

Determinable Impairment(s), when he should have used Table 1--
Residual Functional Capacity:  Maximum Sustained Work Capacity
Limited to Sedentary Work as a Result of Severe Medically
Determinable Impairment(s).  Under the ALJ's erroneous evaluation
and use of Table 2, plaintiff was not disabled, while a correct
evaluation and use of Table 1 would have led to the conclusion
that plaintiff is disabled.

     The magistrate judge summed up his conclusions and
recommendation:

> In this case, [plaintiff] has been seeking benefits
> through the administrative process for over four years.
> The evidence in this case is clear.  [Plaintiff's] work
> limitations fall squarely within the requirements of
> Medical-Vocational Rule 201.14, and [plaintiff] is
> therefore presumed disabled under the Act without
> further inquiry into his work ability.  Accordingly,
> the Court finds that because the evidence is
> conclusive, an award of benefits at this stage would be
> in the best interest of [plaintiff's] health and
> welfare and will avoid further undue delay which would
> result upon remand for additional review.  The Court
> therefore recommends that the district court judge
> direct that this case be remanded for the sole purpose
> of determining the amount of benefits to be awarded to
> [plaintiff] under the Act.

FC&R at 12.  Because the magistrate judge's conclusion and
recommendation as to plaintiff's first issue was dispositive, the
magistrate judge did not reach plaintiff's remaining issues.

7

D.   Commissioner's Response to the FC&R

In response to the FC&R, Commissioner argued that the ALJ
properly considered Bohnsack's opinions, but noted that they were
self-contradictory and failed to support his limitation of
plaintiff to sedentary work.   Commissioner also noted that the
ALJ expressly stated that he considered the record as a whole and
specifically referenced medical records from Deepak Chavda, M.D.
("Chavda"), another treating physician.   Commissioner also argued
that Simonds is a psychiatrist, and thus his statements
concerning plaintiff's physical impairments are not entitled to
special deference, and that Simonds's opinions contradict other
evidence of record.

III.

Analysis

A.   Standard of Review

In deciding not to accept the magistrate judge's
recommendation, the court notes that judicial review of the
decision of the Commissioner of nondisability is limited to two
inquiries:   (1) whether substantial evidence of record supports
the Commissioner's decision and (2) whether the decision comports
with relevant legal standards.   See Anthony v. Sullivan, 954 F.2d
289, 292 (5th Cir. 1992).   Substantial evidence is such evidence

that a reasonable mind might accept as adequate to support the

decision.  Richardson v. Perales, 402 U.S. 389, 401 (1971).

"[N]o substantial evidence" will be found only where there is a

"conspicuous absence of credible choices" or "no contrary medical

evidence."  Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir.

1988) (per curiam) (citing Hames v. Heckler, 707 F.2d 162, 164

(5th Cir. 1983)).

B.   The ALJ's Consideration of Medical Opinion Evidence

        Plaintiff argues that the ALJ failed properly to consider

the opinions of Bohnsack and Simonds in reaching a conclusion as

to plaintiff's RFC.[3]  Plaintiff acknowledged that the ALJ can

reject a treating source opinion, but contends that prior to

doing so the ALJ must consider and discuss his application of the

following factors outlined in 20 C.F.R. § 404.1527(d)(2)): length

of the treatment relationship, frequency of examination, nature

and extent of the treatment relationship, evidence supporting the

opinion, consistency, and specialization.  Plaintiff complains

---

[3]Bohnsack and Simonds both opined that plaintiff was limited to sedentary work, while the ALJ
assessed plaintiff as limited to light work, except that plaintiff
    [was] not required to stoop, balance, crouch, crawl, kneel, or climb stairs and ramps
    more than occasionally; climb scaffolds, ladders, or ropes; sit without the opportunity to
    occasionally stand in addition to a lunch and the normal legal breaks during the workday;
    walk more than 2 blocks distance at one time without the opportunity to sit; stand or
    walk for more than 4 hours out of an 8 hour workday; push or pull with the feet; work at
    unguarded heights or near unguarded hazardous mechanical equipment.
R. at 15.

that the ALJ's evaluation of plaintiff's RFC contains no discussion of these factors and that the ALJ thus failed to properly evaluate Bohnsack and Simonds's opinions.  Plaintiff contends reversal is required because the ALJ noted the factors to be considered by § 404.1527(d), but discussed only factors pertaining to the treatment relationship and consistency with the record as a whole, concluding that he gave Bohnsack's opinion little or no weight.[4]  Plaintiff complains that the ALJ noted the state agency findings that limited plaintiff to a full range of light work, but he found nothing in the exhibits referenced by the ALJ to support that conclusion.

The magistrate judge agreed, concluding that the ALJ failed to follow the requirement of the Fifth Circuit that "[a]bsent reliable medical evidence from a treating or examining specialist, an ALJ may reject the opinion of the treating physician <u>only</u> if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)."  FC&R at 7 (citing <u>Newton</u>, 209 F.3d at 453) (emphasis in original).

The court finds <u>Newton</u> inapposite to the facts of this case.

---

[4]The ALJ in a single paragraph indicates that he accorded Bohnsack's opinion "little weight" and "no weight." R. at 18.

In <u>Newton</u>, the Fifth Circuit held that the ALJ must perform the detailed analysis required by 20 C.F.R. § 404.1527(d) only "absent reliable medical evidence from a treating or examining physician" that controverts the treating physician's opinions. 209 F.3d at 453.  The Fifth Circuit further noted that in requiring the detailed analysis of § 404.1527(d) it was not considering a case "where there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another," nor was it a case where the ALJ weighed the treating physician's opinion "against the medical opinion of other physicians who have treated or examined the claimant" and reached a contrary opinion.  <u>Id.</u> at 458.  Here, the ALJ did rely on the controverting medical opinions of other treating or examining physicians and considered those opinions over those of Bohnsack and Simonds.

The court thus finds plaintiff's arguments under the first issue to be without merit.  In the paragraph introducing the ALJ's discussion of plaintiff's RFC, he expressly stated that he reached his conclusion as to plaintiff's RFC "[a]fter careful consideration of the entire record. . . ."  R. at 15.  Next, following his discussion of plaintiff's testimony at the hearing, the ALJ stated that in reaching his conclusions as to the RFC, he

11

had considered "the objective findings on the [plaintiff's] physical examinations," as well as "all of the credible medical evidence. . . ." Id. at 17.  The record and the medical evidence that the ALJ would have considered include the findings of John Obermiller, M.D. ("Obermiller"), who personally examined plaintiff, and whose findings were specifically referenced by the ALJ.  Obermiller noted that plaintiff was in "no acute distress," had only a "mildly antalgic gait," and was not using assistive devices.  Id. at 160.  Obermiller further noted that plaintiff's knee had no swelling or effusion, full range of extension, no tenderness, and normal motor and sensory testing.  Id.

The medical evidence considered by the ALJ would also have included the medical records from Chavda, another treating physician.  Over the course of several months Chavda consistently noted that plaintiff had negative grinding test, negative Apley and Lachman's test, and no discoloration, redness, or effusion. Although plaintiff experienced some pain associated with some of the tests performed, Chavda noted plaintiff also experienced increased range of motion following treatment.  R. at 328.  In September and November of 2008, Chavda noted that plaintiff was completing his home exercises, which included stretching and walking, and that he was "active completing activities of daily

12

living." Id. at 294.  Kalpana Ramakrishna, M.D., who examined
plaintiff following Chavda's referral, also noted only "mild
osteoarthritis" following a CT scan.  Id. at 249.

     The ALJ also considered the medical records of Bohnsack, who
in January 2007 completed a certification form for plaintiff,
apparently in conjunction with plaintiff's use of Family and
Medical Leave Act leave from his employer, wherein Bohnsack
indicated plaintiff was able only to perform "sedentary work."
Id. at 214.  Bohnsack also wrote two "To Whom It May Concern"
letters:  one dated February 12, 2008, stating plaintiff was
unable to do "long term standing or stooping" and asking that the
denial of plaintiff's disability be given a "second thought," id.
at 219, and another dated August 1, 2007, wherein Bohnsack stated
plaintiff was not able to stand "for any time at all," id. at
233.  The ALJ found these conclusions contradictory to Bohnsack's
own findings that plaintiff had "[n]ormal range of motion,
strength and tone," and Bohnsack's recommendation of "regular
exercise" for plaintiff.  Id. at 206.

     Bohnsack's opinion was also contradicted by plaintiff's
testimony at the hearing that he was able to stand and perform
household chores, walk for exercise, walk his dogs two or three
times per day, did not use assistive devices to walk, and spent

his day standing and sitting intermittently.  Given that the ALJ
considered the entire record, it is apparent he also found
Bohnsack's opinions contradictory to plaintiff's other treating
or examining physicians.  To the extent Bohnsack was stating his
opinion that plaintiff is disabled, "the ALJ has sole
responsibility for determining a claimant's disability status."
<u>Martinez v. Chater</u>, 64 F.3d 172, 176 (5th Cir. 1995) (internal
citations and quotation marks omitted).

Plaintiff also complains that the ALJ referred to the
findings of the state agency physician, yet nothing in the
exhibits cited by the ALJ supports the ALJ's RFC determination.
The court disagrees.  Exhibit 2B, referred to by the ALJ, titled
"Explanation of Determination," indicates the findings of
Obermiller, Robert Hunnicutt, M.D., and Richard F. Haenke, D.O.
("Haenke"), were used in the conclusion concerning plaintiff's
medical condition.  Each of these physicians' findings supports
the ALJ's determination of plaintiff's RFC.

For example Haenke, upon examining plaintiff, noted that
plaintiff's activities of daily living were "[n]ormal as
tolerated," plaintiff was in "no acute distress," had normal
gait, and full range of motion in his knee.  <u>Id.</u> at 155-56.
Haenke noted that plaintiff was "functioning at a very high

level" and was standing and working ten to twelve hours each day.
Id. Haenke suggested that plaintiff lose weight and that he find
a treating physician and perhaps consider surgery to remove the
hardware in his surgically repaired knee. Although Obermiller
suggested plaintiff decrease the number of hours he stood each
day, he did not limit or restrict plaintiff to a certain number
of hours of standing.

"The ALJ is free to reject the opinion of any physician when
the evidence supports a contrary conclusion." Newton, 209 F.3d
at 455 (internal citations, brackets, and quotation marks
omitted). Considering the ALJ's repeated assertions that he
considered the entire record, which included the medical as well
as his specific reference to Exhibit 2B, the court is satisfied
that "competing first-hand medical evidence" supports the ALJ's
findings. See, e.g., Qualls v. Astrue, 339 F. App'x 461, *465-66
(5th Cir. Aug. 4, 2009); Zimmerman v. Astrue, 288 F. App'x 931,
*935-36 (5th Cir. Aug. 13, 2008).

With regards to Simonds, as a psychiatrist, his opinions as
to plaintiff's physical impairments are entitled to no special
deference. See 20 C.F.R. § 404.1527(d)(5) ("We generally give
more weight to the opinion of a specialist about medical issues
related to his or her area of specialty than to the opinion of a

source who is not a specialist." (emphasis added)).  For the
reasons discussed above, the ALJ was entitled to give little or
no weight to Simonds's opinions as to plaintiff's RFC.

Nothing has been called to the court's attention that would
persuade the court that the ALJ did not consider, as he indicated
in his opinion he did, everything he should have considered in
making his RFC determination.  The court thus finds that
substantial evidence in the record supports the ALJ's RFC
determination.  Plaintiff's first issue is denied.

C.   The ALJ Properly Considered Plaintiff's Credibility

Plaintiff contends that the ALJ failed to "articulate
credible and plausible reasons for rejecting [plaintiff's]
subjective complaints."  Pl's Appeal at 12.  Plaintiff argues
that the ALJ's failure to "indicate the credibility choices made,
and the basis for those choices in resolving the truthfulness of
subjective complaints, requires reversal and remand."  Id.
(citing Scharlow v. Schweiker, 655 F.2d 645, 648-49 (5th Cir.
Unit A 1981) (per curiam)).  According to plaintiff, the ALJ
erred by: suggesting that plaintiff's complaints of pain are not
proportionate to the objective medical evidence; discounting
plaintiff's pain because he had not undergone surgery; and
failing to explain how he applied the factors for evaluating

credibility.

The court is satisfied that the ALJ properly evaluated plaintiff's credibility.  As an initial matter, <u>Scharlow</u> fails to support plaintiff's claims.  As the Fifth Circuit explained, the <u>Scharlow</u> holding cited by plaintiff occurred in a situation where the ALJ "excluded all consideration of the claimant's subjective complaints."  <u>Haywood v. Sullivan</u>, 888 F.2d 1463, 1469 (5th Cir. 1989).  In the instant case, however, the ALJ expressly acknowledged that plaintiff experienced "some level of pain and functional loss," R. at 17, but concluded that plaintiff's subjective complaints of pain were out of proportion to the objective medical evidence.  Ultimately, the ALJ gave plaintiff "the benefit of all doubt as to his subjective complaints," <u>id.</u>, yet still determined that neither the objective medical evidence, other non-medical evidence, nor plaintiff's complaints warranted a finding that plaintiff was disabled.  These are precisely the type of credibility determinations "the ALJ is best positioned to make."  <u>Falco v. Shalala</u>, 27 F.3d 160, 164 (5th Cir. 1994).

Contrary to plaintiff's complaint, the ALJ did not base his credibility conclusion solely on plaintiff's refusal to have surgery to repair his meniscus tear.  The entirety of the ALJ's observations concerning plaintiff's surgery for his meniscus tear

comprised two sentences, where the ALJ noted the tear and
observed that "the claimant is avoiding surgery to improve this
condition," which he noted "seem[ed] inconsistent with the amount
of pain" plaintiff testified to at the hearing.  R. at 17.  In
the same paragraph, the ALJ discussed Obermiller's medical report
that plaintiff had only a "mildly antalgic gait," id., needed no
assistive device to walk, and had no swelling or effusion of the
knee and only minimal atrophy in the musculature of the left leg.
The ALJ properly also noted plaintiff's testimony that he stood
to wash dishes, needed no assistive devices to walk, and walked
his dogs up and down the block multiple times each day.  "It is
appropriate for the Court to consider the claimant's daily
activities when deciding the claimant's disability status."
Leggett v. Chater, 67 F.3d 558, 565 n.12 (5th Cir. 1995).

    The ALJ stated that he considered plaintiff's subjective
complaints in compliance with 20 C.F.R. § 404.1529 and Social
Security Rulings 96-4p and 96-7p, and that he considered
plaintiff's testimony and the information and observations of
plaintiff's treating physicians and others.  The ALJ also noted
that he considered "all of the credible medical evidence," R. at
17, which would have included the records of Chavda and
Obermiller, and provided corresponding limitations to plaintiff's

RFC.  All of the foregoing are proper for the ALJ to consider in

assessing plaintiff's credibility.  Johnson v. Heckler, 767 F.2d

180, 182 (5th Cir. 1985).  The court concludes that substantial

evidence supports the ALJ's credibility determination.

D.   The *Stone* and Severe Impairment Issues

     Under the third issue plaintiff argues that the following

recitation by the ALJ improperly stated the severity standard

established in Stone:

>     An impairment or combination of impairments is "severe"
>     within the meaning of the regulations if it
>     significantly limits an individual's ability to perform
>     basic work activities.  An impairment or combination of
>     impairments is "not severe" when medical and other
>     evidence establish only a slight abnormality or a
>     combination of slight abnormalities that would have no
>     more than a minimal effect on an individual's ability
>     to work.
>
>     .  .  .  .
>
>     As the claimant's symptoms are reasonably related to
>     the foregoing medically determinable impairments, and
>     as the foregoing impairments could have more than a
>     minimal effect on the claimant's ability to perform
>     basic work-related activities, they constitute "severe"
>     impairments[.] (See . . . Stone v. Heckler, 752 F.2d
>     1099 (5th Cir. 1985).

R. at 11-12.  Plaintiff argues that the ALJ's failure to apply

the proper Stone standard may have caused him to overlook

plaintiff's other significant limitations which may impact on his

ability to perform work-related activities, including plaintiff's

diagnosis of anxiety, Bohnsack's notation that plaintiff suffers from bilateral inguinal hernias, and plaintiff's complaints of swelling in his left lower extremity.  These errors, plaintiff contends, caused the ALJ to incorrectly assess plaintiff's RFC.

The court disagrees with plaintiff's contention that the ALJ failed correctly to cite the proper <u>Stone</u> standard.  It is true that the ALJ did not perfectly recite the language from <u>Stone</u>: "An impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."  752 F.2d at 1101 (internal citations, quotations, and brackets omitted).  However, the Fifth Circuit has cautioned against a rigid adherence to "magic words" to prove that the ALJ applied the proper standard.  <u>See</u> <u>Hampton v. Bowen</u>, 785 F.2d 1308, 1310 (5th Cir. 1986) (finding that remand is only necessary "where there is no indication that the ALJ applied the correct standard").

Because there is indication that the ALJ applied the correct standard, this argument fails.  The <u>Stone</u> standard defines when impairments do not qualify as severe; the ALJ, in discussing plaintiff's impairments, defined when impairments did qualify as

severe, and specifically cited to Stone.  The former is the definition in the negative and the latter the definition in the affirmative.  The court therefore concludes that the ALJ properly employed the Stone standard for evaluating the severity of a claimant's impairments.

As the foregoing discussion demonstrates, the ALJ understood and correctly used the Stone standard.  But there is another reason why there is no Stone issue in this case.  When evaluating eligibility for benefits, the ALJ did not stop at the step two severity analysis but instead proceeded through steps three and four.  The Fifth Circuit has said that any Stone complaint becomes irrelevant where the ALJ's analysis proceeds past step two.  See Jones v. Bowen, 829 F.2d 524, 526 n.1 (5th Cir. 1987) (rejecting claimant's argument concerning Stone where the ALJ's analysis proceeded to steps four and five of the analysis); Chapparo v. Bowen, 815 F.2d 1008, 1011 (5th Cir. 1987) (per curiam) (rejecting claimant's argument concerning Stone where the ALJ's analysis did not end at step two, but proceeded to step four).

The ALJ in Stone found against the plaintiff at step two of the five-step analysis and concluded that the plaintiff did not have a severe impairment.  See Stone, 752 F.2d at 1100.  In

contrast, the ALJ here found in favor of plaintiff at step two
and concluded that his impairments were severe.  R. at 12.  The
ALJ then proceeded through the remainder of the five-step
analysis, reaching a conclusion that plaintiff was not disabled
under the Act.  Therefore the ALJ's analysis "did not turn on
whether or not [plaintiff's] impairment was severe," but rather
proceeded to step five--"an inquiry unaffected by the test set
forth in Stone."  Chaparro, 815 F.2d at 1011.  The Stone argument
is thus irrelevant to the disposition of plaintiff's case.

Plaintiff's contention that the ALJ should have found his
additional complaints to be severe impairments is also without
merit.  Plaintiff's testimony at the hearing of his need to
elevate his legs is unsupported by the record or by any treating
physician.  The ALJ need not credit subjective complaints
unsupported by medical evidence.  See Wren v. Sullivan, 925 F.2d
123, 129 (5th Cir. 1991).

Similarly, nothing in the record supports plaintiff's
assertion that the ALJ should have considered his bilateral
inguinal hernias as impairments.  The hernias are mentioned in a
February 6, 2007 medical summary by Bohnsack under a review of
systems, that states simply "[p]ositive for . . . bilateral
inguinal hernias."  Id. at 205.  In Bohnsack's other medical

summaries the inguinal hernias are listed only under a heading of
"Past Medical History."  R. at 202, 203, 207.  No mention is made
in the record of treatment received by plaintiff for the
bilateral inguinal hernias or their effect on plaintiff.
Significant is that no physician, including Bohnsack, appears to
have imposed any limitation or restriction on plaintiff as a
result of the hernias.  Bohnsack failed to mention them in his
letters encouraging unknown entities to find that plaintiff is
disabled.  R. at 233, 237.  In short, there is nothing in the
record that would have caused the ALJ to consider plaintiff's
bilateral inguinal hernias as any type of impairment.

The same is true for plaintiff's complaint of anxiety.
Contrary to plaintiff's assertion in his brief, the record does
not reflect a diagnosis of anxiety, but rather only plaintiff's
subjective complaint of anxiety.  Although the record shows
plaintiff has been prescribed Xanax, the record also fails to
contain any reference to any limitation or restriction on
plaintiff as a result of anxiety, and Simonds testified at the
hearing after a review of plaintiff's medical records that
plaintiff experienced no mental problems or limitations.
Again, nothing in the record supports plaintiff's contention that
the ALJ should have considered his anxiety as an impairment.

IV.

<u>Conclusion and Order</u>

For the reasons given above, the court concludes that the magistrate judge's recommendation of reversal and remand should be rejected.   The court disapproves of all proposed findings and conclusions of the magistrate judge that are inconsistent with this memorandum opinion.   The court concludes that all arguments made by plaintiff in support of the issues he presents in his brief are without merit.

Therefore,

The court ORDERS that the decision of Commissioner that plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act be, and is hereby, affirmed.

SIGNED March _8_, 2012.

JOHN McBRYDE
United States District Judge